**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors. | Chapter 11 Case No. 12-12020 (MG)<br><br>(Jointly Administered) |
| RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>ALLSTATE INS. CO., *et al.*,<br><br>Defendants. | Adv. Proc. No. 12-ap-01671 (MG)<br><br>Case No. 12-cv-05116 |

**DEBTORS' OPPOSITION TO FEDERAL HOUSING FINANCE AGENCY'S MOTION TO WITHDRAW THE REFERENCE**

# TABLE OF CONTENTS

Page

BACKGROUND ....................................................................................................... 2

I. The Debtors' Adversary Proceeding....................................................................... 2

II. FHFA's Lawsuits and Pleadings Regarding the Debtors' Stay Request. ............................ 4

ARGUMENT ........................................................................................................... 5

I. Mandatory Withdrawal Is Not Required Because The Debtors' Adversary Complaint Requires Only Simple Application Of Non-Bankruptcy Federal Law. ............. 5

II. Simple Application Of HERA's Anti-Injunction Provision Makes Clear That It Does Not Bar The Debtors' Requested Relief. ................................................................ 8

A. A Temporary Stay of the FHFA Lawsuit Would Not "Restrain or Affect" FHFA's Exercise of Its Powers or Functions. ................................................................ 8

B. HERA's Anti-Injunction Provision Does Not Override the Automatic Stay of § 362(a) Which Applies to FHFA's Claims Against the Non-Debtor Affiliates. .................................................................................................. 11

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chemtura Corp. v. United States*,
2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010) .... 7

*City of New York v. Exxon Corp*.,
932 F.2d 1020 (2d Cir. 1991) .... 1, 6

*Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp*.,
489 U.S. 561 (1989) .... 1, 9

*Ester Sadowsky Testamentary Trust v. Syron*,
639 F. Supp. 2d 347 (S.D.N.Y. 2009) .... 11

*Freeman v. FDIC*,
56 F.3d 1394 (D.C. Cir. 1995) .... 10

*In re 48th St. Steakhouse, Inc*.,
835 F.2d 427 (2d Cir. 1987) .... 12, 13

*In re Adelphi Inst., Inc*.,
112 B.R. 534 (S.D.N.Y. 1990) .... 6

*In re Chateaugay Corp*.,
193 B.R. 669 (S.D.N.Y. 1996) .... 6, 15

*In re Ciccone*,
171 B.R. 4 (Bankr. D.R.I. 1994) .... 12

*In re CIS Corp*.,
188 B.R. 873 (S.D.N.Y. 1995) .... 5

*In re Colonial Realty Co*.,
980 F.2d 125 (2d Cir. 1992) .... 13, 14

*In re Fed. Home Loan Mortg. Corp. Derivative Litig*.,
643 F. Supp. 2d 790 (E.D. Va. 2009) .... 11

*In re Ionosphere Clubs*, *Inc*.,
922 F.2d 984 (2d Cir. 1990) .... 5, 6

*In re Lane*,
136 B.R. 319 (D. Mass. 1992) .... 12

*In re Recoton Corp.*,
2004 WL 1497570 (S.D.N.Y. July 1, 2004) .......... passim

*Kuriakose v. Fed. Home Loan Mortgs. Co.*,
674 F. Supp. 2d 483 (S.D.N.Y. 2009) .......... 10

*NRDC, Inc. v. Fed. Hous. Fin. Agency*,
815 F. Supp. 2d 630 (S.D.N.Y. 2011) .......... 10

*Picard v. JPMorgan Chase & Co.*,
454 B.R. 307 (S.D.N.Y. 2011) .......... 6, 7

*Queenie, Ltd. v. Nygard Int'l*,
321 F.3d 282 (2d Cir. 2003) .......... 12, 13

*Town of Babylon v. Fed. Hous. Fin. Agency*,
790 F. Supp. 2d 47 (E.D.N.Y. 2011) .......... 10

*Volges v. Resolution Trust Corp.*,
32 F.3d 50 (2d Cir. 1994) .......... 10

**Statutes**

11 U.S.C. § 362(a) .......... passim

11 U.S.C. § 362(a)(1) .......... 3, 13, 14

11 U.S.C. § 362(a)(3) .......... 3, 12, 14

12 U.S.C. § 1821(j) .......... 13

The Debtors filed an adversary proceeding and motion to stay the prosecution of numerous claims against certain non-debtor affiliates, including claims by the Federal Housing Finance Agency ("FHFA") against those same non-debtor affiliates, until the effective date of the Debtors' restructuring plan. The Bankruptcy Court will hear that motion on July 10, 2012. FHFA now seeks to withdraw the reference from the Bankruptcy Court on this issue, arguing that withdrawal is mandatory because the Bankruptcy Court would have to undertake "substantial consideration" of HERA's anti-injunction provision to resolve the issue.

FHFA is wrong for two distinct reasons. *First*, Debtors' request for a temporary stay will involve only a simple application of the one-sentence anti-injunction provision. As the Second Circuit and this Court have made clear, mandatory withdrawal only applies when resolution of the matter requires the Bankruptcy Court to engage in substantial interpretation, as opposed to simple application, of federal non-bankruptcy law. *See, e.g.*, *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)); *In re Recoton, Corp.*, 2004 WL 1497570, at *3 (S.D.N.Y. July 1, 2004). This is not such a case.

*Second*, the language of HERA's anti-injunction provision does not bar the temporary stay that the Debtors request. That provision only prohibits any "court … action [that would] restrain or affect the exercise of powers or functions of the Agency." 12 U.S.C. § 4617(f). A temporary stay would not "restrain or affect" FHFA's exercise of its powers or functions. *See, e.g.*, *Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 574-77 (1989). A brief stay of litigation—similar to that the Court ordered earlier in FHFA's lawsuits—is not a violation of the anti-injunction provision. Nor does the anti-injunction provision override the automatic stay of 11 U.S.C. § 362(a) which applies to FHFA's claims against the non-debtor affiliates pursuant to §§ 362(a)(1) and (a)(3).

FHFA's motion notably fails to cite a single decision in which the reference was withdrawn on the issue of whether to enforce or extend the automatic stay of litigation. That is for good reason: bankruptcy courts routinely resolve requests for automatic stays because debtors typically need breathing room to focus on their restructuring efforts, as do the Debtors here. For these reasons, FHFA's motion should be denied.

## BACKGROUND

### I. The Debtors' Adversary Proceeding.

On May 14, 2012, the above-captioned debtors and debtors in possession (collectively, the "Debtors") commenced these Chapter 11 proceedings. The Debtors, the fifth largest servicer of residential mortgage loans in the United States, are indirectly owned by Ally Financial, and the U.S. government owns 74 percent of Ally Financial.

As of their bankruptcy filing, the Debtors faced numerous lawsuits arising from their issuance or sale of mortgage-backed securities. Certain of the Debtors' non-debtor affiliates, including Ally Financial Inc. ("Ally Financial"), GMAC Mortgage Group LLC ("GMACM Group"), Ally Securities LLC ("Ally Securities"), and Ally Bank (collectively, the "Non-Debtor Affiliates"), were named as defendants in twenty-five of those lawsuits (the "MBS Actions").[1]

Because continuation of those MBS Actions against the Non-Debtor Affiliates would have severe adverse consequences on the Debtors and their restructuring efforts, the Debtors filed an adversary proceeding and motion to stay the MBS Actions. (*See* Adversary Compl. (attached as Ex. 1 to Decl. of J. Haims) and Debtors' Mot. to Extend Automatic Stay or, In the Alternative, for Injunctive Relief ("Stay Motion") (attached as Ex. 2 to Haims Decl.).) As set forth in those papers, the MBS Actions are subject to the automatic stay of 11 U.S.C. § 362(a)

[1] The Debtors' Adversary Complaint and Stay Motion identify twenty-seven MBS Actions, but two of those have been resolved and voluntarily dismissed from the Adversary Complaint. (*See* Dkt. 30.)

and, in the alternative, should be stayed pursuant to 11 U.S.C. § 105.

The MBS Actions are subject to the automatic stay of § 362(a)(3) because continuation of those lawsuits against the Non-Debtor Affiliates would deplete insurance policies and proceeds that the Debtors submit are an asset of their estate. (*See* Adversary Compl. ¶¶ 6, 39; Stay Mot. at 34-38.) The MBS Actions are also subject to the automatic stay of § 362(a)(1) because the Debtors and Non-Debtor Affiliates share an identity of interest. The claims against the Non-Debtor Affiliates are based on the Debtors' underlying conduct and allege "alter ego" and "control person" theories of liability. Thus, if the MBS Actions go forward, the Debtors will face substantial discovery obligations that will interfere with their restructuring efforts; they will be exposed to a risk of collateral estoppel, *stare decisis*, and evidentiary prejudice; and their estate will face indemnification claims from the Non-Debtor Affiliates. (*See* Adversary Compl. ¶¶ 5-6, 36-38; Stay Mot. at 22-34.)

The Debtors' Adversary Complaint and Stay Motion seek limited relief to provide the Debtors the breathing spell that comes with a large, complex Chapter 11 filing such as this. The Debtors request a temporary stay of the MBS Actions against the Non-Debtor Affiliates that would last, at most, "until the effective date of a restructuring plan in these Chapter 11 cases." (Stay Mot. at 3.) The Debtors do not seek to stay FHFA's prosecution of its claims in other lawsuits and against other defendants. Nor does the Debtors' Adversary Complaint or Stay Motion seek a permanent injunction or any permanent release of the MBS Actions, contrary to FHFA's suggestion—and while an eventual plan of reorganization may seek a third-party release, that potential request is not part of these pleadings. Instead, the pleadings that are the subject of FHFA's motion seek only a temporary stay of the prosecution of the MBS Actions, including FHFA's claims against the Non-Debtor Affiliates.

In recognition of the temporary nature of the relief requested, the Debtors have reached a stipulation with plaintiffs in eighteen of the twenty-five MBS Actions that stays the plaintiffs' prosecution of those lawsuits until October 31, 2012. (*See* Stipulation, Dkt. 51.)

## II. FHFA's Lawsuits and Pleadings Regarding the Debtors' Stay Request.

FHFA brought claims against various Debtors, certain Non-Debtor Affiliates, including Ally Financial, Ally Securities, and GMACM Group, and seven unaffiliated underwriters, including J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, RBS Securities, Inc., Citigroup Global Markets Inc., Barclays Capital Inc., UBS Securities LLC, and Goldman, Sachs & Co., (the "FHFA Lawsuit"). Following the Debtors' chapter 11 petition, FHFA filed an amended complaint dismissing the Debtors from the lawsuit. (*See* Mem. in Supp. of Withdrawal Mot. ("Withdrawal Mot.") at 3 n.2.)

FHFA has brought numerous additional lawsuits against the issuers and underwriters of other residential mortgage-backed securities purchased by Freddie Mac. None of those lawsuits are affected by the Debtors' Adversary Complaint or Stay Motion. Sixteen of those lawsuits, including the FHFA Lawsuit, have been coordinated for pre-trial proceedings before this Court.

In November 2011, this Court stayed the continuation of all sixteen lawsuits while a motion to dismiss by UBS was briefed and resolved in one of the lawsuits. That stay of the time to answer or respond in fifteen of the lawsuits lasted six months—until May 14, 2012. FHFA did not argue that the temporary stay was a violation of HERA's anti-injunction provision.

After lifting that temporary stay, the Court entered a scheduling order allocating each of FHFA's sixteen lawsuits into a tranche for trial. The FHFA Lawsuit is in the fourth and final tranche of cases for trial. (*See* Scheduling Order at 4 (attached as Ex. H to Leung Decl. in Supp. of Withdrawal Mot.).) As FHFA makes clear in its opposition to the Debtors' Stay Motion, "no adverse judgment could possibly be rendered against any defendant prior to 2014 at the earliest,"

(FHFA Opp'n at 3 (attached as Ex. 3 to Haims Decl.))—and the trial in the FHFA Lawsuit "would not begin before January 2015," (Withdrawal Mot. at 7). In fact, the Debtors' proposed temporary stay would have little impact on discovery in the FHFA Lawsuit: although document production is scheduled to be substantially completed by September 30, 2012, FHFA concedes that "fact and expert discovery" in the FHFA Lawsuit does not close until December 6, 2013—long after the Debtors' proposed emergence from bankruptcy. (*Id.*)

Rather than reach an agreement to temporarily stay the FHFA Lawsuit, FHFA filed both an opposition to the Debtors' Stay Motion in the Bankruptcy Court (the "FHFA Opposition"), and a motion asking this Court to withdraw the reference regarding the Debtors' Adversary Complaint. FHFA's Withdrawal Motion is limited to relief for itself. (*Id.* at 9 n.9.)

## ARGUMENT

FHFA contends that mandatory withdrawal is required because determination of whether to temporarily stay the FHFA Lawsuit against the Non-Debtor Affiliates will require "substantial consideration of a non-bankruptcy federal statute"—namely, HERA's anti-injunction provision. 12 U.S.C. § 4617(f). That is not so, and FHFA's Withdrawal Motion should be denied.

### I. Mandatory Withdrawal Is Not Required Because The Debtors' Adversary Complaint Requires Only Simple Application Of Non-Bankruptcy Federal Law.

Section 157(d) mandates withdrawal of the reference only if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The Second Circuit and this Court "have consistently held that § 157(d) should be construed narrowly, so that it does not provide an escape hatch out of bankruptcy court." *In re CIS Corp.*, 188 B.R. 873, 877 (S.D.N.Y. 1995); *accord In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990); *In re Recoton Corp.*, 2004 WL 1497570, at *3 (S.D.N.Y. July 1, 2004) (Cote, J.); *In re Chateaugay*

*Corp.*, 193 B.R. 669, 673 (S.D.N.Y. 1996). As this Court has recognized, mandatory withdrawal "is appropriate only when substantial and material potential conflicts exist between non-bankruptcy federal laws and Title 11"—in other words, "when resolution of the matter calls for the bankruptcy judge to 'engage in significant interpretation, as opposed to simple application,' of federal non-bankruptcy statutes." *In re Recoton*, 2004 WL 1497570, at *3 (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)); *accord In re Ionosphere*, 922 F.2d at 995; *In re Adelphi*, 112 B.R. 534, 536 (S.D.N.Y. 1990).

The Bankruptcy Court need not "engage in significant interpretation" of HERA's anti-injunction provision to resolve the Debtors' request for a temporary stay. The language of the anti-injunction provision bars any "court … action [that would] restrain or affect the exercise of powers or functions of the Agency." 12 U.S.C. § 4617(f). The Bankruptcy Court need only engage in a "simple application" of the statute in order to resolve the Debtors' Adversary Complaint and Stay Motion. *See In re Recoton*, 2004 WL 1497570, at *3.

In its Opposition to the Stay Motion, FHFA argues that HERA's anti-injunction provision categorically prevents the Bankruptcy Court from staying the FHFA Lawsuit against the Non-Debtor Affiliates. (*See, e.g.*, FHFA Opp'n at 16 ("HERA precludes the [Bankruptcy] Court from granting equitable relief against FHFA as conservator ….").) While the Debtors and FHFA disagree over the result of applying that provision, neither side disputes that the Bankruptcy Court need only engage in a "simple application" of the provision to the requested relief. That analysis does not call for the "significant interpretation" required to withdraw the reference.

FHFA claims that the standard for mandatory withdrawal is more easily satisfied when the issue is one of first impression. (Withdrawal Mot. at 11.) As support, FHFA cites two cases, but neither help its cause. In *Picard v. JPMorgan Chase & Co.*, 454 B.R. 307 (S.D.N.Y. 2011),

withdrawal was mandatory because "the Trustee's complaint will require the bankruptcy court to engage in ***significant consideration*** of federal non-bankruptcy law." *Id.* at 312 (emphasis added). Specifically, the Bankruptcy Court would have had to decide whether a Supreme Court decision overruled a Second Circuit decision in order to determine whether a Securities Investor Protection Act trustee could assert common-law claims. *Id.* at 315. Similarly, in *Chemtura Corp. v. United States*, 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010), withdrawal was mandatory because the Bankruptcy Court had to analyze the intricacies of CERCLA, and resolve an issue that the Supreme Court had purposely left unresolved. Far from relaxing the standard for mandatory withdrawal, both *JPMorgan Chase* and *Chemtura* required "significant interpretation" of non-bankruptcy statutes.

The non-bankruptcy law at issue here—HERA's anti-injunction provision—is far more analogous to the issue in *In re Recoton*, 2004 WL 1497570 (S.D.N.Y. July 1, 2004). There, the creditors sought discovery, pursuant to Bankruptcy Rule 2004, from the debtors' former directors and officers who were defendants in securities litigation. After opposing the creditors' request, the directors and officers moved to withdraw the reference arguing that the PSLRA and SLUSA discovery protections prevented the Bankruptcy Court from allowing Rule 2004 discovery. *Id.* at *2. This Court held that withdrawal was not mandatory because, although the Bankruptcy Court "considered the provisions of the PSLRA and SLUSA in determining the appropriateness of the Committee's Discovery Motion, their inapplicability to Rule 2004 was sufficiently clear and unambiguous that he was not required to and he did not resort to any 'significant interpretation' of federal non-bankruptcy statutes in doing so." *Id.* at *3.

So too here. To resolve the Debtors' request for a temporary stay of the FHFA Lawsuit, the Bankruptcy Court need only engage in a "simple application"—not "significant

interpretation"—of HERA's anti-injunction provision to the Debtors' request. *See id.* Accordingly, FHFA's request for mandatory withdrawal should be denied.

## II. Simple Application Of HERA's Anti-Injunction Provision Makes Clear That It Does Not Bar The Debtors' Requested Relief.

Applying the plain language of HERA's anti-injunction provision does not require the Bankruptcy Court to deny the Debtors' request for a temporary stay of the FHFA Lawsuit against the Non-Debtor Affiliates. That is so for two reasons. First, neither the Adversary Complaint nor the Stay Motion "restrain[s] or affect[s]" FHFA's exercise of its powers or functions, as required for application of HERA's anti-injunction provision. Second, settled law makes clear that the anti-injunction provision does not override the automatic stay of 11 U.S.C. § 362(a) which applies to FHFA's claims against the Non-Debtor Affiliates.

### A. A Temporary Stay of the FHFA Lawsuit Would Not "Restrain or Affect" FHFA's Exercise of Its Powers or Functions.

The Debtors' Adversary Complaint and Stay Motion request limited relief—a temporary stay—that does not "restrain or affect" FHFA's ability to pursue its lawsuits. In an effort to squeeze the Debtors' requested relief into the strictures of HERA's anti-injunction provision, FHFA contends that "the Debtors seek to enjoin FHFA from pursuing the FHFA Case against their solvent non-debtor affiliates." (Withdrawal Mot. at 1.) That is not so. Neither the Adversary Complaint nor the Stay Motion seeks a permanent injunction or release that would prohibit FHFA from pursuing its claims against the Non-Debtor Affiliates. Instead, the Debtors' pleadings seek only a temporary stay of the MBS Actions, including the FHFA Lawsuit, "until the effective date of a plan of reorganization." (Proposed Order, Dkt. 9, at 2.)

Such a temporary stay does not "restrain or affect" FHFA's exercise of its powers or functions. It does not prevent or stay FHFA's prosecution of its claims in the fifteen other lawsuits. It does not prevent or even delay FHFA's ultimate prosecution of its claims against the

Non-Debtor Affiliates, as that trial is not scheduled to occur until 2015. (*See* Scheduling Order at 4.) Nor does it prevent or delay FHFA's ability to obtain a judgment in the FHFA Lawsuit, as FHFA concedes that "no adverse judgment could possibly be rendered against any defendant prior to 2014 at the earliest." (FHFA Opp'n at 3.)

Further, the temporary stay would have little impact on discovery in the FHFA Lawsuit. The requested stay does not restrain or delay FHFA's ability to depose employees of the Non-Debtor Affiliates, as "no depositions will be conducted until 2013." (*Id.*) At most, the temporary stay that the Debtors seek would slow the time for the Non-Debtor Affiliates to brief a motion to dismiss and to produce documents—but that would not prohibit FHFA's ability to ultimately obtain fact or expert discovery, as that window does not close until December 6, 2013. (*See* Scheduling Order at 3.)

That minor delay in the initial phases of a lawsuit not set for trial for three years is not a restraint on FHFA's ability to exercise its powers. In evaluating a substantially similar anti-injunction provision (applicable to the Federal Savings and Loan Insurance Corp.), the Supreme Court has indicated that a minor delay is not a sufficient "restraint" to violate the statute. *See Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 574-77 (1989) (holding that judicial resolution of claims against insolvent savings and loan association would not "*restrain or affect* the exercise of powers or functions of a conservator or receiver" even though it would delay the FSLIC's receivership functions). In fact, if a temporary stay of motion to dismiss briefing and document production was a violation of HERA's anti-injunction provision, then this Court's stay of the time to answer or move to dismiss FHFA's complaints, from November 2011 until May 2012, would have been such a violation—but of course, FHFA never argued as much.

FHFA does not—because it cannot—cite to any case holding that a temporary stay, like that sought in the Debtors' Adversary Complaint, is a restraint on FHFA's ability to exercise its powers. Nor does FHFA even cite to a case withdrawing the reference to determine whether a temporary stay of a lawsuit is a violation of an anti-injunction provision. Instead, FHFA points to dicta—a footnote—in *In re Colonial Realty Co.* to assert that "the conflict presented in this case warrants withdrawal of the reference." (Withdrawal Mot. at 17.) That decision did not analyze the withdrawal issue. Indeed, after noting that "the issue is moot," the Court merely stated that "it would *appear*" the withdrawal motion should have granted—but it did not hold, or "recognize[]" as FHFA suggests, (*id.*), that mandatory withdrawal was required. *In re Colonial Co.*, 980 F.2d 125, 128 n.5 (2d Cir. 1992).

Nor do any of the remaining cases that FHFA cites have anything to do with whether a temporary stay of a lawsuit is prohibited by an anti-injunction provision—under either HERA or the analogous Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (applicable to the FDIC). Instead, FHFA cites cases regarding injunctions that "unabashedly" prohibited FHFA or FDIC from exercising their powers. *Sunshine Dev. v. FDIC*, 33 F.3d 106, 112 (1st Cir. 1994). For example, FHFA cites cases where courts considered whether to enjoin the agency from foreclosing on and/or auctioning property, *see id.*; *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994), whether to invalidate the agency's actions under the Administrative Procedures Act, *see NRDC, Inc. v. Fed. Hous. Fin. Agency*, 815 F. Supp. 2d 630, 642 (S.D.N.Y. 2011); *Town of Babylon v. Fed. Hous. Fin. Agency*, 790 F. Supp. 2d 47, 54 (E.D.N.Y. 2011), whether to declare provisions of Freddie Mac's contracts unenforceable, *see Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 494 (S.D.N.Y. 2009), and whether to prevent the agency from substituting itself as the

plaintiff in a derivative action against the directors of the very entity of which it is conservator, *see Esther Sadowsky Testamentary Trust v. Syron*, 639 F. Supp. 2d 347, 351 (S.D.N.Y. 2009); *In re Fed. Home Loan Mortg. Corp. Deriv. Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009).

None of those cases are relevant to the application of HERA's anti-injunction provision to a request for a temporary stay of a lawsuit against certain defendants. The Debtors' requested relief is entirely different in kind. The Debtors seek only a temporary stay—a freeze—of the FHFA Lawsuit against the Non-Debtor Affiliates. Neither the Adversary Complaint nor the Stay Motion will restrain or delay FHFA in taking its claims against the Non-Debtor Affiliates to trial or collecting on any judgments against them. The temporary stay that the Debtors seek does not "restrain or affect" FHFA's exercise of its powers, as simple application of the anti-injunction provision to the Debtors' request makes clear, so mandatory withdrawal is inapplicable.

**B. HERA's Anti-Injunction Provision Does Not Override the Automatic Stay of § 362(a) Which Applies to FHFA's Claims Against the Non-Debtor Affiliates.**

The language of HERA's anti-injunction provision and settled law also make clear that the provision is inapplicable where the stay is automatic pursuant to § 362(a), as is the case here. By its terms, the anti-injunction provision only prohibits "court … action." 12 U.S.C. § 4617(f). It does not bar a stay that is automatic pursuant to statute—and, as the Debtors' Adversary Complaint and Stay Motion make clear, the FHFA Lawsuit against the Non-Debtor Affiliates is subject to the automatic stay of § 362(a).

FHFA's Withdrawal Motion insinuates that the Debtors seek only an injunction under § 105. (*See* Withdrawal Mot. at 1 ("[T]he Debtors seek to enjoin FHFA … pursuant to Section 105 of the Bankruptcy Code.").) That is not so. As set forth in the Debtors' Adversary Complaint and Stay Motion, the FHFA Lawsuit and all of the other MBS Actions are subject to the automatic stay of § 362(a). The MBS Actions, and the FHFA Lawsuit, are subject to the

automatic stay of § 362(a)(3) because the prosecution of those claims will deplete property that the Debtors submit is an asset of the estate, namely insurance policies and proceeds that provide coverage for those lawsuits. (*See* Adversary Compl. ¶¶ 39, 46; Stay Mot. at 34-38; *see also In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430-31 (2d Cir. 1987) (automatic stay of § 362(a)(3) applied to action against non-debtors).) The MBS Actions and the FHFA Lawsuit are also subject to the automatic stay of § 362(a)(1) because of the identity of interest between the Debtors and Non-Debtor Affiliates: discovery in the lawsuit will inevitably impose significant burdens on the Debtors, who possess the mortgage loan files at issue; two of FHFA's claims against Ally Financial and GMACM Group allege "control person liability" based on the Debtors' alleged wrongdoing, as FHFA concedes, (*see* Withdrawal Mot. at 5); and all of FHFA's claims against the Non-Debtor Affiliates give rise to indemnification claims against the Debtors' estate. (*See* Stay Mot. at 22-34; *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003).)

HERA's anti-injunction provision undoubtedly does not override § 362(a)'s automatic stay of lawsuits against debtors. Courts interpreting the nearly identical anti-injunction provision in FIRREA have confirmed as much. *See Sunshine Dev.*, 33 F.3d at 113-114 (automatic "stay's curtailment of the FDIC's power does not run afoul of FIRREA's anti-injunction provision, which only prohibits 'court … action'"); *In re Lane*, 136 B.R. 319, 321 (D. Mass. 1992) (same); *In re Ciccone*, 171 B.R. 4, 5 (Bankr. D.R.I. 1994) (same). Indeed, FHFA does not even argue that HERA's anti-injunction provision trumps the automatic stay afforded the Debtors, so it cannot pursue its claims against them or seek discovery from them.

More importantly, HERA's anti-injunction provision similarly does not prohibit stays of lawsuits against non-debtors that are automatic pursuant to § 362(a), as are FHFA's claims against the Non-Debtor Affiliates in the FHFA Lawsuit. "Section 362 of the Bankruptcy Code is

an 'automatic stay' provision." *Sunshine Dev.*, 33 F.3d at 113. Lawsuits that fall within its enumerated subparagraphs are automatically stayed, even lawsuits against non-debtors. *See In re 48th St. Steakhouse*, 835 F.2d at 430-31; *Queenie*, 321 F.3d at 288; *see also* Stay Mot. at 21-38.

The Second Circuit's decision in *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992), is directly on point. There, the Court considered whether the anti-injunction provision of FIRREA prohibited the automatic stay of a lawsuit against non-debtors. A year after Colonial Realty filed for bankruptcy protection, the FDIC filed a lawsuit in Florida seeking to recover funds allegedly transferred by the debtors to non-debtors. *Id.* at 127-28. "Neither the Debtors nor the Bankruptcy Trustee were named in the Florida Action …." *Id.* at 128. The bankruptcy trustee moved for an order "that the Florida Action violated the automatic stay provision of the Bankruptcy Code … and enjoining the FDIC from continuing that action." *Id.* The FDIC "argued that the bankruptcy court lacked jurisdiction to make any determination of the Trustee's motion in view of … 12 U.S.C. § 1821(j)," the anti-injunction provision of FIRREA. *Id.* at 129. The Bankruptcy Court rejected the FDIC's argument, finding that the Florida Action against non-debtors was subject to the automatic stay and therefore FIRREA's anti-injunction provision "did not prevent entry of an injunction to enforce the stay." *Id.*

On appeal, the Second Circuit first expressly considered whether the Florida Action against non-debtors was subject to the automatic stay of § 362(a). The Court noted that § 362(a) identifies multiple actions that are subject to the automatic stay, and only one of which is an "action[] 'against the debtor.'" *Id.* at 131 (quoting § 362(a)(1)). The Court reasoned that another set of actions delineated in § 362(a)—actions "to recover a claim against the debtor"—"must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage." *Id.* at 131. The Court thus concluded that the

Florida Action against non-debtors was "subject to the automatic stay." *Id.* at 132.

The Second Circuit then went on to consider whether FIRREA's anti-injunction provision trumped the automatic stay of § 362(a) and barred the bankruptcy court's injunction to enforce that stay. The Court noted that the "purpose of the automatic stay is to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Id.* at 133. The Court further reasoned that "the automatic stay is imposed by Congressional mandate and not by court order." *Id.* at 137. It thus found that "the injunctive order issued in this case to implement the stay was in a sense superfluous …. The stay imposed by § 362(a) is automatically 'applicable to all entities' without any need for the intervention of any court or ruling." *Id.* The Court therefore concluded that FIRREA's "ban upon '*court* … action …' does not inhibit the operation of the automatic *statutory* stay" of the Florida Action against non-debtors. *Id.*; *accord Sunshine Dev.*, 33 F.3d at 114 ("[T]he automatic stay does not violate FIRREA's anti-injunction provision because it arises directly from the operation of a legislative enactment, not by court order.").[2]

So too here. FHFA's claims against the Non-Debtor Affiliates are subject to the automatic stay of § 362(a), pursuant to both § 362(a)(3) and § 362(a)(1). The plain language of HERA's anti-injunction provision, and the case law interpreting that language, make clear that it does not override the automatic stay applicable to FHFA's claims against the Non-Debtor Affiliates. Mandatory withdrawal of the reference is therefore inapplicable. *See In re Recoton*, 2004 WL 1497570, at *3 (withdrawal only mandatory "when resolution of the matter calls for the bankruptcy judge to 'engage in significant interpretation, as opposed to simple application,'

[2] The fact that the Debtors' structured their Adversary Complaint and Stay Motion, and their requested relief, as a prospective extension of the automatic stay, rather than simply waiting and moving to enforce the automatic stay once violated, is of no moment. As *Colonial Realty* makes clear, the "stay imposed by § 362(a) is automatically 'applicable to all entities' without any need for the intervention of any court or ruling." 980 F.2d at 137.

of federal non-bankruptcy statutes"); *In re Chateaugay Corp.*, 193 B.R. 669, 673 (S.D.N.Y. 1996) ("Withdrawal is not required when consideration of non-Code law entails only the straightforward application of settled law to the facts of a particular case.").

**CONCLUSION**

For the foregoing reasons, the Debtors respectfully request that the Court deny FHFA's motion to withdraw the reference of the Adversary Complaint.

Dated: July 3, 2012
New York, New York

_/s/ Joel C. Haims_____________
Larren M. Nashelsky
Gary S. Lee
Joel C. Haims
Jonathan C. Rothberg

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Proposed Counsel to the Debtors and Debtors in Possession*